HERCULES INCORPORATED (formerly Hercules Powder Company), a corporation, Plaintiff,

v.

MINNESOTA STATE HIGHWAY DEPARTMENT et al., Defendants.

No. 4–71 Civ. 140.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 4, 1972.

Merchant & Gould, by John D. Gould, Minneapolis, Minn., with Henry N. Paul, Jr., Philadelphia, Pa., for plaintiff.

Warren Spannaus, Atty. Gen., State of Minn. by Eric B. Schultz, Deputy Atty. Gen., for Minn. State Hy. Dept.

Faegre & Benson by Rodger L. Nordbye, and Lawrence C. Brown, Minneapolis, Minn., for defendants Dow Chemical Co. and Agric. Services.

Bernd W. Sandt, Midland, Mich., for Dow Chemical Co.

NEVILLE, District Judge.

This lawsuit appears in several aspects to be one of first impression. It is brought under 35 U.S.C. § 271 et. seq. and 28 U.S.C. § 1400(b) for claimed infringement of a process patent owned by plaintiff. Jurisdiction is conferred on this court by 28 U.S.C. § 1338. It is alleged that the Minnesota State Highway Department in spraying its rights-of-way for weed and pesticide control, is using a process that infringes plaintiff's patent. No individual state officials or employees are made defendants. Defendant Dow Chemical Company manufactures, and through its distributor, Agricultural Services, Inc., (the Dow defendants) sells to the State Highway Department the liquid or mixtures which are used in the spraying process. The Dow defendants are thus claimed to be inducing or contributing infringers under 35 U.S.C. § 271(b) and (c). By its amended complaint, plaintiff has added Count II alleging that the Highway Department's use of the patented process without license or just compensation to plaintiff constitutes a taking of property without due process of law in violation of plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks both injunctive relief and an award of monetary damages from all defendants.

Defendant Highway Department has moved for dismissal, claiming sovereign immunity and thus lack of jurisdiction in this court under the XI Amendment of the United States Constitution. The Dow defendants have moved for dismissal on two grounds. The first is a claim by both Dow defendants of "derivative" sovereign immunity as to them, and the second claim as to Dow alone is improper venue. The Dow defendants' first ground proceeds on the theory that since they are suppliers to the State in its sovereign function and are not themselves users of the claimed infringing process (except possibly for demonstration purposes), they are thereby clothed·

with the State's sovereign immunity. The improper venue ground is based on 28 U.S.C. § 1400(b) discussed *infra*.

All three defendants invite the court to assume for purposes of this motion (without of course so admitting on the merits) that the Highway Department is infringing plaintiff's patent, that the Dow defendants are what in a normal situation would be contributing infringers and that the facts as plaintiff claims them to be concerning the alleged waiver of the State's immunity are true. Given these premises, it would appear that the motions of all three defendants involve no material fact dispute and can be ruled on as matter of law, whether they be deemed motions in the nature of summary judgment or motions brought under Rule 12 of the Federal Rules of Civil Procedure for failure of the complaint to state a cause of action. The threshold question is whether an immunity exists as to the State of Minnesota in a patent infringement case. It does not of course follow *a fortiori* that if the State is immune, the Dow defendants are also immune; but it is a *sequitur* that if the State is not immune, the principal argument of the Dow defendants disappears. Defendants have been unable to cite any similar case, though the State virtually conceded during the course of its oral argument that it is subject to suit for injunctive relief for patent infringement. The State's argument focused on immunity from damages. The Dow defendants, however, vigorously pursued all aspects of the State's claimed immunity and sought to bring themselves under its umbrella.

■ The question of the effect of the XI Amendment to the United States Constitution in a patent infringement suit against a State apparently has never been directly or fully answered by the Supreme Court. The Constitution Art. I, Sec. 8, vests in Congress the power:

"To promote the progress of science and useful arts, by securing for limited times, to authors and investors,

the exclusive right to their respective writings and discoveries."

Congress has proceeded to enact laws to accomplish such, Title 35 U.S.C., to the exclusion of the States. 28 U.S.C. § 1338, conferring jurisdiction on United States Courts in patent cases, states: "Such jurisdiction shall be *exclusive* of the courts of the states in patent and copyright cases." [Emphasis added]. There can be thus no general state court relief afforded for patent infringement.

The XI Amendment was adopted after the effective date of the Constitution and provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state."

Since the plaintiff corporation in the case at bar is a citizen of a State other than Minnesota, and since it is attempting to invoke the judicial power of the United States through this court, a literal reading of this amendment might be thought to put an end to the inquiry and to bar a suit of any kind at any time. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (XI Amendment applies to suits by its own citizens as well as citizens of another state); Cargile v. New York Trust Co., 67 F.2d 585 (8th Cir. 1933). Plaintiff, at least recognizing this possibility, has by its amended complaint added a Count II as follows: The XIV Amendment to the Constitution, adopted long after the XI Amendment, contains the language ". . . nor shall any state deprive any person of life, liberty, *or property* without due process of law . . .." See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), incorporating in effect in the XIV amendment the provisions so far as states are concerned of the first eight amendments to the Constitution. The XIV amendment many times has been construed to mean that property cannot

be taken by a state without the payment of just compensation. Chicago, Burlington & Quincy R.R. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). A patent and the right to its exclusive use long have been recognized as a species of property. In essence the argument is that, though the XIV amendment makes no reference to the earlier adopted XI amendment, it prohibits the State from seizing an individual's property without paying therefor and recovery is not barred by the XI amendment. The United States Supreme Court early recognized that the Federal Government itself could not use nor appropriate patents without payment of just compensation. James v. Campbell, 104 U.S. 356, 26 L.Ed. 786 (1882); Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S. Ct. 373, 89 L.Ed. 322 (1945). As the court stated in *James* at p. 787:

> "That *the government* of the United States when it grants letters-patent for a new invention or discovery in the arts, *confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation,* any more than it can appropriate or use without compensation land which has been patented to a private purchaser, we have no doubt. . . . Many inventions relate to subjects which can only be properly used by the government, such as explosive shells, rams, and submarine batteries to be attached to armed vessels. If it could use such inventions without compensation, the inventors could get no return at all for their discoveries and experiments. . . . The United States has no such prerogative as that which is claimed by the sovereigns of England, by which it can reserve to itself, either expressly or by implication, a superior dominion and use in that which it grants by letters-patent to those who entitle themselves to

such grants. *The government of the United States, as well as the citizen, is subject to the Constitution; and when it grants a patent the grantee is entitled to it as a matter of right,* and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor."

As a matter of abstract justice, it should follow unless the bar of the XI amendment is absolute that a state similarly cannot appropriate a patent without just payment therefor.

Defendants rely on the case of Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599 (1896) and succeeding cases. There the Court held—over the vigorous dissent of the first late Justice Harlan—that the doctrine of sovereign immunity barred a suit for injunction or damages against officials of the United States government for patent infringement on the ground that granting relief in that case would constitute an "interference with property of the United States."

■ For the reasons set forth below, however, this court finds and holds that the Minnesota State Highways Department is subject to suit for injunctive relief for patent infringement, but not subject to liability for damages or an accounting.

Despite the language of at least one patent text,[1] Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and the decisions descending from it clearly require that state officers when they infringe patents be subject to the injunctive process of a federal court. In *Young* an action was brought in federal court to enjoin the Minnesota Attorney General from enforcing—in his discretion—an allegedly unconstitutional Minnesota statute, and the Supreme Court held that the XI Amendment did not bar the suit. The Court said:

> "In such case no affirmative action of any nature is directed, and the officer

---

1. "No state can be sued for any infringement of a patent without its statutory con-

sent," Walker On Patents, Deller's Edition, Vol. I § 432, at 1644.

is simply prohibited from doing an act which he had no legal right to do. An injunction to prevent him from doing that which he has no legal right to do is not an interference with the discretion of an officer." 209 U.S. at 159, 28 S.Ct. at 453.

■ The case at bar clearly falls within the rationale of *Ex Parte Young.* Neither the State of Minnesota nor its highway department or officers have any right to use a valid patent without license or compensation and that doing so constitutes a violation of constitutional protections of rights in property.

Adopting the view that the State has no right to infringe a patent, it is clear that, as to remedy, the instant case falls within the language of *Ex Parte Young* —that is, there being no legal right to infringe in the Highway Department or its agents, an injunction against the infringing actions of the State "does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official . . .." [2] 209 U.S. at 159, 28 S.Ct. at 454. Indeed, the case for enjoining patent infringement by the state would seem to be even stronger than that for enjoining *Young,* since exclusive power over patents is vested in the federal government and its courts. Thus, if the Federal courts cannot hear a claim of patent infringement by a state because of the XI Amendment, a patentee will *never* have a forum for asserting the unconstitutionality of the taking of his patent.[3] In *Young,* the Court allowed injunction against the Minnesota Attorney General despite the availability of State courts in which the railroads initially could have asserted their constitu-

tional claims, with ultimate review in the Supreme Court.

Thus while there is not present in the case at bar action under an unconstitutional statute, that absence would not seem to dictate any different result. The Highway Department is performing an illegal act (based on the facts the court is asked to assume *arguendo*) which amounts to the taking of property without due process of law and the federal courts' injunctive process should issue. See Arkansas State Highway Commission v. Butler, 105 F.2d 732 (8th Cir. 1939); Warner v. Board of Trustees, 277 F.Supp. 736 (D.La.1967).

The most recent case called to this court's attention from the Eighth Circuit is Board of Trustees of Arkansas A & M College v. Davis, 396 F.2d 730 (8th Cir. 1968), cert. denied 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968), where the court adopts the rationale of *Ex Parte Young* as applied to a suit by a discharged faculty member—and a damage suit withal. The court said:

"Plaintiff does not dispute that Arkansas A & M College is a state agency. He stands on the proposition, however, with which we agree, that sovereign immunity does not extend to state or federal officials who act beyond their authority or in violation of the United States Constitution.

The foundation case is Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where the Supreme Court held that a suit against the Attorney General of Minnesota to enjoin the enforcement of an unconstitutional state statute did not violate the prohibition of the Eleventh Amendment. . . ." 396 F.2d at 732

---

2. The court is aware that the notion of enjoining state officials in their official duties under the 14th Amendment—addressed to state action—while still claiming that the immunity provided by the 11th Amendment is unaffected has been severely criticized as a legal fiction. *See, e. g.,* Wright, Law of Federal Courts 185; Currie Feedral Courts 470. At least 60 years of legal precedent, however, re-

quire this court to accept and apply that fiction.

3. The Dow defendants argue that the plaintiff has a remedy through the State Claims Commission, but the State has opposed waiver of immunity or payment of Hercules claim before that body and states it will oppose it were it to be brought before the state legislature.

See also Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

It would seem that, if *Ex Parte Young* ever was in doubt, the *Board of Trustees case* has breathed new Eighth Circuit life into it.

As to the liability of the State of Minnesota for damages, the court believes without passing on the liability of individuals that the state has an immunity therefrom and plaintiff's complaint insofar as it prays for an accounting and damages should be dismissed against the Minnesota State Highway Department. The state has never given its consent to be sued in tort. A patent infringement sounds in tort and the unauthorized use and seizure of a patent is analogous to a common law conversion, a typical tort. The state, not having waived such, is entitled to immunity under the XI Amendment, *Ex Parte Young* and the granting of injunctive relief to the contrary notwithstanding.

That the doctrine of sovereign immunity in the Eighth Circuit is a very viable and current one in a suit against a state for damages and monetary recovery is evidence by the very recent decision upholding sovereign immunity of Employees of Dept. of Public Health & Welfare of Missouri v. Dept. of Public Health and Welfare, State of Missouri, 452 F.2d 820 (8th Cir. 1971), reversing by 5 to 4 an earlier decision by a three judge panel under the same name, holding to the contrary.

Plaintiff for some reason best known to itself, did not name as individual defendants the highway commissioner nor any of the employees of the highway department, but merely "Minnesota State Highway Department". If the distinction between suing a department or agency of the State and individuals who control and manage it is important, no one has so argued to the court, and for purpose of this motion the court will treat this suit as brought against both, rather than to effect a dismissal on this technical ground if such is warranted, merely to have plaintiff start over again. If such a distinction is believed to be vital, plaintiff may move to amend its complaint to include or substitute such persons in due course. It would appear from McCoy v. Louisiana State Board of Education, 345 F.2d 720 (5th Cir. 1965), that injunctive action will be against a state agency and members need not be joined. On the other hand, in Board of Trustees of Arkansas A & M College v. Davis, 396 F.2d 730 (8th Cir. 1968), though. the suit was against "a body corporate" and the only individual named was the college president, the court said:

> "It is apparent from the order denying the motion to dismiss that the District Court was of the view that *the individual members of the Board of Trustees*, although not named, and Dr. Babin acted under color of state law in subjecting plaintiff to deprivation of rights secured by the Constitution of the United States." 396 F.2d at 734

This would seem to be authority to treat the case at bar as though brought against the individual members of the Highway Department. Plaintiff nevertheless might feel more comfortable were one or a few of the individuals joined as defendants and leave so to do is granted if desired.

█ It has long been held that individuals, though employed by a state government generally do not have the XI Amendment immunity. *Ex Parte Young* was after all a suit against an individual as are many of the cases. As stated in Wright, Law of Federal Courts, 2d Ed. (1970) Sec. 48, p. 185:

> "There is no doubt that the reality is as Justice Harlan stated it [in a dissenting opinion] and that everyone knew that the Court was engaging in fiction when it regarded the suit as one against an individual named Young rather than against the state of Minnesota. The fiction has its own illogic. The Fourteenth Amendment

runs only to the states; in order to have a right to relief under the amendment the plaintiff must be able to show that state action is involved in the denial of his rights. It would have been possible to hold that the Fourteenth Amendment qualified the immunity from suit granted states by the Eleventh Amendment, but the Court did not so hold. Instead it created the anomaly that enforcement of the Minnesota statute is state action for purposes of the Fourteenth Amendment but merely the individual wrong of Edward T. Young for purposes of the Eleventh Amendment."

There is no doubt but that some decisions have taken a view contrary to that here adopted. William C. Popper & Co. v. Pennsylvania Liquor Control Board, 16 F.Supp. 762 (E.D.Pa.1936); Automobile Abstract & Title Co. v. Haggerty, 46 F.2d 86 (E.D.Mich.1931). The case of Warren Bros. Co. v. Kibbe, 43 F.2d 582 (D.C.Or.1925), is distinguishable for there the court found consent on the part of the state by virtue of its indemnity undertakings. But Cf. Kraft Foods Co. v. Walther Dairy Products, 118 F. Supp. 1, 24 (W.D.Wis.1954).

■ What has been said above disposes of the "secondary" or "derivative" immunity claimed by the Dow defendants. They are alleged to be contributory infringers. Since this court holds there is no State immunity so far as injunctive relief is concerned, a fortiori Dow defendants have no "derivative" immunity. The court further holds Dow defendants have no immunity insofar as a claim for damages is concerned. If the patent is infringed by the State Highway Department, and if the Dow defendants are in fact contributory infringers (ultimately both fact questions) then the fact that as to one type of remedy i. e., damages, the State has an immunity should not inure to the Dow defendants. There exists a right in a pat-

entee to enforce his patent and the fact that it cannot or does not have a remedy in one facet against one entity, does not mean that it is not enforceable against others. By analogy on a normal cause of action, the statute of limitations may be a bar to suit against one defendant, but not another who for instance has been out of state, and the successful "plea in bar" by one does not extinguish the cause of action as to the other. The defense of the statute of frauds at times has been held to pose a similar situation. Even if the state had a complete immunity, the court has doubt whether such would immunize secondary infringers in any event.

■ Correctly asserting that there can be no contributing infringement if there is no direct infringement of a patent, Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), and 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), the Dow defendants attempt to bring themselves within the protective umbrella of the State's claimed immunity by analogy to the situation where a domestic manufacturer may freely make and sell parts for shipment to and assembly and use in foreign countries, even though they would be contributing infringers if the assembly and use of the parts was done in the United States. See, e. g., Cold Metal Process Co. v. United Engineering & Foundry Co., 235 F.2d 224 (3d Cir. 1956). While there is language to suggest that reasoning in the Aro case, supra,[4] such an extension of the State's immunity is neither warranted nor required. Of course it is true that if the State were not a defendant, Count II as directed toward the Dow defendants would fail insofar as alleging violation of the XIV or V Amendments since these are prohibitions on governmental and state action and not on an individual's activity. Since the court holds no derivative sovereign

---

4. [I]f the purchaser and user could not be amerced [punished or fined] as an infringer, certainly one who sold to him

. . . cannot be amerced for contributing to a non-existing infringement." 365 U.S. 341, 81 S.Ct. 602.

immunity exists however this question is immaterial and the case is really a straight patent infringement suit against the Dow defendants.

■ Plaintiff has asserted the claim that the State in the instant case has waived its immunity. Obviously, it does not have great faith in this claim, for it has applied to the State Claims Commission, an interim commission operating under the aegis of the State Legislature, for a resolution recommending legislation permitting suit against the State. This court's prior order of July 22, 1971 discusses this facet of the case. Apart from this, however, plaintiff points out that in advertising for bids, the state made a specific requirement that the bid price include "royalty fees which may apply for the use of United States Patent No. 3,197,299 [the one here claimed to be infringed]". Further paragraph 20 of the invitation to bid specifies that the successful bidder "shall hold and save the State of Minnesota, its officers, agents, servants and employees harmless from liability, for or on account of the use of any . . . patented or unpatented invention . . . " Whether a waiver requires a specific act of the legislature or can be effected merely by conduct of the state's officers and employees, though it need not decide, for in no event so far as the court can determine could the above be construed to be a waiver of state immunity; rather it is a prudent protection against what might be claimed liability on its part at some time in the future and is consistent with the fact that it does not intend to assume liability.

■ What has been said hereinabove disposes of the Dow defendant's venue motion, premised as it is on the theory that since they have no liability as contributory or secondary infringers because the shield of the derivative State immunity there is thus no infringement within the District of Minnesota under 28 U.S.C. § 1400 requiring both an infringement and a regular and established place of business within the district. The court need not rule on the timeliness of such a motion since on its merits it has no force in view of the court's holding that the Dow defendants have no immunity and thus an infringement occurred in Minnesota.

■ The final question raised at the hearing relates to plaintiff's claim that defendant Dow Chemical Company has committed in the State of Minnesota *"and elsewhere"* acts of infringement or contributory infringement and that Dow has infringed or contributed thereto by aiding, abetting and inducing the State of Minnesota *"and others"* to spray pesticides. The assertion was made at the hearing that this language entitles plaintiff to attempt to establish infringements by Dow throughout the United States and elsewhere. The court does not agree, and strikes from plaintiff's amended complaint the words "and elsewhere" in paragraph 3 and the words "and others" in paragraph 8. The most elemental requirements of notice pleading are not met by the use of these words. Further the court does not believe it should try here claimed infringements arising for instance in California, Texas, New York or elsewhere, and therefore the discussion was not appropriate at the hearing concerning proposed depositions to be taken around the country, except of course as they may relate to the claimed infringement in Minnesota.